IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

HERITAGE PACIFIC FINANCIAL, LLC,   *

       Plaintiff,   *

       v.   *

                            *   CIVIL NO.: WDQ-12-2594

FIRST AMERICAN TITLE INSURANCE
COMPANY, *et al.*,   *

       Defendants.   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Heritage Pacific Financial, LLC[1] ("Heritage") sued First American Title Insurance Company ("First American") and Does 1 through 10 (collectively, the "Defendants") for breach of contract and other claims. Pending are First American's motion to dismiss, First American's motion to strike Heritage's surreply, and Heritage's "counter-motion" for leave to file a surreply.[2] For the following reasons, First American's motion to strike will be granted; Heritage's motion for leave to file a surreply, and First American's motion to dismiss, will be denied.

---

[1] Doing business as Heritage Pacific Financial.

[2] The Clerk will amend the docket to identify ECF No. 21 as a motion for leave to file a surreply.

I.  Background[3]

On May 9, 2007, Michael Milan purchased the real property located at 9204 Redwood Avenue, Bethesda, Maryland 20817 (the "Property") for $2.8 million.  Compl. ¶¶ 7, 11, 12.  MortgageIt financed the sale through a $1,960,000 loan, which was secured by a deed of trust on the Property.  *Id.* ¶ 11; *see id.*, Ex. A. The MortgageIt deed of trust was filed in Montgomery County, Maryland by Excelente Settlements, Inc. ("Excelente")[4].  *Id.* ¶ 13.  Title for the MortgageIt loan was insured by First American.  *Id.* ¶ 14.[5]  On June 4 and 18, 2007, Milan obtained $500,000 and $650,000 loans on the Property from Community First Bank and Rycho Funding, LLC ("Rycho Funding"), respectively. *Id.* ¶¶ 17, 19; *see id.*, Exs. B, C.  Both were secured with deeds of trust, and the Community First Bank deed was insured by First American.  *See id.* ¶¶ 17-19.

---

[3] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

[4] Heritage alleges, "upon information and belief," that Excelente is "no longer in business."  Compl. ¶ 8.

[5] At about the same time, Milan obtained a second, $420,000 loan from National City Bank ("NCB"), which was not "accompanied by a recorded lien."  *Id.* ¶¶ 15-16.

On June 25, 2007, Milan sought to refinance the Property by applying for a $975,000 home equity line of credit (the "HELOC") from NCB. Compl. ¶¶ 20, 33; *see id.*, Exs. D, J. Excelente produced the title report for NCB. *Id.* ¶ 36. Despite Excelente and First American's knowledge of the Community Bank lien--which had been filed by Excelente and insured by First American earlier that month, *see id.* Ex. B--NCB was "led to believe" that there were only two liens on the Property: the original MortgageIt purchase lien and NCB's unrecorded $420,000 lien. *Id.* ¶¶ 35-36.[6] Consistent with this expectation, NCB's closing instructions directed that the MortgageIt loan would be paid off in part,[7] and its unrecorded $420,000 loan would be paid off in full: placing the HELOC in second-lien position. *Id.* ¶ 37; *see id.*, Ex. K; ECF No. 16-1 at 3.

In connection with the refinancing, First American issued a title insurance policy to NCB (the "Policy"). *Id.* ¶¶ 9, 22; *see id.*, Ex. E. The Policy stated that no other liens were on the

---

[6] Milan's application for the Loan indicated that only one lien--in the amount of $1,250,000--was on the Property. Compl. ¶ 34; *see id.*, Ex. J at 1. At the time, there were more than four. *Id.* ¶ 34.

[7] In its opposition to the motion to dismiss, Heritage asserts that $710,000 was to be paid toward the MortgateIt loan, reducing that loan to $1.25 million. ECF No. 16-1 ¶ 5.

Property. *Id.* ¶ 25; *see id.*, Ex. E (Schedule B, Part II).[8] On June 18, 2007, First American mailed NCB[9] a Closing Protection Letter (a "CPL").[10] *Id.* ¶ 26; *see id.*, Ex. G. The CPL stated that First American would reimburse NCB for "actual loss" arising out of the issuing agent's--identified as Excelente-- failure to comply with certain of NCB's closing instructions, or the agent's fraud or dishonesty in handling NCB's funds and documents in connection with the closing. *Id.*, Ex. G at 1. First American was paid $2347.50 for the Policy. *Id.* ¶ 40.

At relevant times, Milan was in an intimate relationship with Excelente employee Tilan Zeighani. *See* Compl. ¶ 31. On August 11, 2009, Zeighani pled guilty in the U.S. District Court for the Eastern District of Virginia to conspiring to defraud various banks by obtaining home equity loans in amounts exceeding the Property's value. *See id.*, Ex. I. On November

---

[8] The title commitment paperwork explained that the unrecorded $420,000 NCB loan "was to be paid and released of the record as to the [P]roperty." Compl. ¶ 23; *see id.*, Ex. F. The $1,960,000 MortgageIt loan was also "to be paid and released of record" as to the Property, which "did not occur." *Id.* ¶ 24.

[9] The CPL was addressed to NCB's Closing Department and NCB's "[s]uccessors and[/]or assigns as their interests may appear." *Id.*, Ex. G at 1.

[10] A CPL is "an agreement by a title insurance company to indemnify a lender, or in some cases a purchaser, for loss caused by a settlement agent's fraud or dishonesty or by the agent's failure to follow the lender's written closing instructions." James Bruce Davis, *The Law of Closing Protection Letters*, 36 Tort & Ins. L.J. 845, 845 (2001).

4

30, 2009, a trustee's deed was executed against the Property after Milan defaulted. *Id.* ¶ 41; *see id.,* Ex. N. On February 17, 2010, foreclosure on the Property was officially recorded. *Id.* ¶ 42.

Sometime before July 30, 2010, NCB merged with PNC Bank, N.A. ("PNC"). Compl. ¶ 49. On July 30, 2010, PNC sold the HELOC to American Servicing Recovery Group ("ASRG"), which sold the Loan to HP Debt Exchange, LLC ("HP Debt"). *Id.; see id.,* Ex. R. HP Debt assigned the HELOC to Heritage. *Id.* ¶ 49; *see id.,* Ex. L. "Upon purchasing" the HELOC, Heritage "discovered" the "massive fraud" committed by Excelente in the closing of "multiple loans on the [Property]." *Id.* ¶ 50. Specifically, Excelente "did not place the . . . HELOC in second position, as direct[ed] in the closing instructions." *Id.* ¶ 51. "In fact, [the] HELOC was in either third or fourth position . . . behind Community [First] Bank and/or Rycho Funding." *Id.* Further, Heritage "is informed and believes" that Zeighani facilitated Excelente's closing of the HELOC by "failing to disclose . . . the multiple existing liens on the Property [to original lender NCB]." *Id.* ¶ 52. NCB "would never have approved and disbursed nearly one million dollars to [Milan]" had it known about these earlier loans. *Id.* ¶ 56.

On May 30, 2012, Heritage submitted a claim to First American under the June 18, 2007 CPL. Compl. ¶ 55; *see id.,* Ex.

5

T. "As part of" the claim, Heritage submitted a letter explaining, *inter alia*, that it had suffered damages because of First American's insured agent's (Excelente): (1) failure to follow NCB's closing instructions, and (2) concealment of other liens on the Property. *Id.* ¶ 56; *see id.*, Ex. T. The claim was denied on June 8, 2012. *Id.* ¶ 57; *see id.*, Ex. U. The current unpaid balance on the HELOC is $1,027,225.16. *Id.* ¶ 42.

On July 23, 2012, Heritage filed suit for breach of contract, detrimental reliance, and fraud, in the Circuit Court for Baltimore County, Maryland. ECF No. 2. On August 29, 2012, First American removed the action to this Court on the basis of diversity jurisdiction. ECF No. 1, Notice of Removal.[11] On September 7, 2012, First American moved to dismiss. ECF No. 8. On October 25, 2012, Heritage timely opposed the motion to dismiss. ECF No. 16; *see* ECF No. 14. On November 9, 2012, First American replied. ECF No. 18. On November 21, 2012, Heritage filed a surreply. ECF No. 19. On November 26, 2012, First American moved to strike Heritage's surreply. ECF No. 20. On December 4, 2012, Heritage opposed the motion to strike and "counter"-moved for leave to file a surreply. ECF No. 21. On

---

[11] Heritage is a Texas limited liability company. Notice of Removal ¶ 5; Compl. ¶ 5. Heritage's sole member is also a citizen of Texas. ECF No. 25 at 1. First American is a California corporation with its principal place of business in California. Notice of Removal ¶ 6; ECF No. 26 ¶ 4.

December 21, 2012, First American opposed Heritage's motion for leave to file a surreply. ECF No. 22.

II. Analysis

A. First American's Motion to Strike Heritage's Surreply, and Heritage's "Counter"-Motion For Leave to File a Surreply

First American argues that Heritage's surreply should be stricken under Local Rule 105.2(a). ECF No. 20. Heritage opposes the motion to strike, and retroactively seeks leave to file its surreply, on the basis that First American's reply "raised several legal issues and arguments for the first time that, without [Heritage's] response, would go uncontested." ECF No. 21; ECF No. 21-1 at 3. Specifically, Heritage contends that First American's reply brief argues, "for the first time," that the CPL is an indemnity--as opposed to "simple"--contract; Heritage failed to plead the date it suffered injury; and Heritage's detrimental reliance claim is barred as a quasi-contract claim. ECF No. 21-1 at 3-4. First American objects that its reply memorandum simply "responded to the arguments made by [Heritage] in its Opposition." ECF No. 22 ¶ 6.

Unless otherwise ordered by the Court, a party may not file a surreply. Local Rule 105.2(a) (D. Md. 2011). Leave to file a surreply may be granted when the movant otherwise would be unable to contest matters presented in the opposing party's

7

reply. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004).

In its opposition to the motion to dismiss, Heritage argued that, although governed by a three-year statute of limitations, its claims were timely because: (1) the CPL is an insurance policy, which was breached--thus triggering the limitations period--upon First American's refusal to indemnify Heritage in June 2012; (2) the detrimental reliance claim accrued when Excelente's failure to comply with closing instructions "resulted in a total and complete inability to recover from the sale of the [Property] at foreclosure [in November 2009]"; and (3) the fraud claim similarly accrued upon the Property's November 2009 foreclosure. ECF No. 16-1 ¶¶ 16-19. First American's reply explains why Heritage's accrual arguments are incorrect. *See generally* ECF No. 18.[12] As both sides of the accrual argument have been presented, Heritage's motion for leave to file a surreply will be denied, and First American's motion to strike will be granted.

---

[12] The proposed surreply acknowledges that First American's reply brief "characterizes Heritage's case law as inapposite and reiterates its position that the causes of action all began accruing in June 2007." ECF No. 19 at 1.

B. First American's Motion to Dismiss

1. Legal Standard

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must

9

not only allege but also "show" that the plaintiff is entitled
to relief.  *Id.* at 679 (internal quotation marks omitted).
"Whe[n] the well-pleaded facts do not permit the court to infer
more than the mere possibility of misconduct, the complaint has
alleged--but it has not shown--that the pleader is entitled to
relief."  *Id.* (internal quotation marks and alteration omitted).
An affirmative defense, such as the statute of limitations, may
be raised in a motion to dismiss if clear from the face of the
complaint.  *See Brooks v. City of Winston-Salem*, 85 F.3d 178,
181 (4th Cir. 1996).

    2. The Merits

    First American argues that the complaint is time-barred.
*See generally* ECF No. 8.  Heritage agrees that a three-year
statute of limitations applies to its claims[13]; it disputes,
however, when the statute began to run.  *See generally* ECF Nos.
8, 16.[14]

    "The Maryland rule generally with reference to limitations
is that they begin to run from the time the cause of action
accrues."  *Levin v. Friedman*, 317 A.2d 831, 835 (Md. 1974).

---

[13] *See* Md. Code Ann., Cts. & Jud. Proc. § 5-101 ("A civil action
at law shall be filed within three years from the date it
accrues unless another provision of the Code provides a
different period of time within which an action shall be
commenced.").

[14] For this analysis, the Court will assume--as has First
American, *see* ECF No. 8-1 ¶ 11--that Heritage was assigned the
right to assert these claims.

"The law is concerned with accrual in the sense of testing whether all of the *elements* of a cause of action have occurred so that it is complete." *St. Paul Travelers v. Millstone*, 987 A.2d 116, 121 (Md. 2010) (emphasis added) (internal quotation marks omitted). "The accrual date in any given case is left to judicial determination, and may be a question of law, a question of fact, or a mixed question of law and fact." *Boyd v. Bowen*, 806 A.2d 314, 333 (Md. Ct. Spec. App. 2002). When the viability of a statute-of-limitations defense "hinges on" a question of fact, that question is "ordinarily resolved by a jury, rather than by a court." *Doe v. Archdiocese of Washington*, 689 A.2d 634, 639 (Md. Ct. Spec. App. 1997).

a. Breach of Contract

"It is settled that a cause of action for breach of contract accrues, and the limitations period begins to run, when a plaintiff knows or should have known of the breach." *Samuels v. Tschechtelin*, 763 A.2d 209, 240 (Md. Ct. Spec. App. 2000).[15] "The determination of when a breach of contract occurs usually depends on the nature of the promises made in the contract and the times for performing those promises." *Jones*, 741 A.2d at 1104. "A title insurance policy protects the insured against loss or damage as a result of defects in or the unmarketability

---

[15] *See also Jones v. Hyatt Ins. Agency, Inc.*, 741 A.2d 1099, 1104 (Md. 1999).

of the insured's title to real property." *Stewart Title Guar.*
*Co. v. West*, 676 A.2d 953, 960 (Md. Ct. Spec. App. 1996). Title
insurers "do[] not guarantee the state of the title"; instead,
title insurance policies are "contract[s] of indemnity." *Id.* at
961. Thus, "a title insurance policy is breached only *after*
notice of an alleged defect in title is tendered to the insurer
and the insurer fails to cure the defect or obtain title within
a reasonable time thereafter." *Id.* at 962 (emphasis in
original) (internal quotation marks omitted).

Citing *Stewart*, Heritage argues that its contract claim is
timely because the CPL is a title insurance policy, which First
American breached by refusing to indemnify Heritage in June
2012. *See* ECF No. 16-1 ¶ 17. First American contends that
*Stewart* is "inapposite," because "[t]he [CPL] is not an
insurance contract." ECF No. 18 at 1. First American argues
that breach occurred at the time of the closing on the HELOC, or
June 25, 2007. ECF No. 8-1 ¶ 11.

Whether a CPL is a policy of title insurance appears to be
a question of first impression in the State of Maryland. Many
courts and state insurance departments have concluded that it is
not. Joyce Palomar, *Title Insurance Law* § 20:19; *see, e.g.,*
*Escrow Disbursement Ins. Agency, Inc. v. Am. Title & Ins. Co.,*
*Inc.*, 550 F. Supp. 1192, 1197 (S.D. Fla. 1982) (CPLs do not
spread risk, which is a defining characteristic of insurance

12

under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011, *et seq.*);

*Lawyers Title Ins. Corp. v. New Freedom Mortg. Corp.*, 655 S.E.2d

269, 275 (Ga. Ct. App. 2007) (CPLs are not insurance policies

because "no second party assumes the risk" and "no distribution

of risk is accomplished"); *Metmor Fin., Inc. v. Commonwealth*

*Land Title Ins. Co.*, 645 So. 2d 295 (Ala. 1993) (CPLs are not

insurance policies because they are not within the statutory

definition of the term).  In Maryland, title insurance is

defined as "insurance of owners of property or other persons

that have an interest in the property against loss by

encumbrance, defective title, invalidity of title, or adverse

claim to title."  Md. Code Ann., Ins. § 1-101.  The CPL issued

by First American--which agreed to indemnify NCB for actual loss

incurred as a result of the issuing agent's fraud or dishonesty

in connection with the HELOC--is not within this definition.

*See* Compl., Ex. G.[16]

---

[16] *Cf.* Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 1:7
(3d ed.) ("While a policy of insurance . . . is essentially a
contract of indemnity, not all contracts of indemnity are
insurance contracts; rather, an insurance contract is merely one
type of indemnity contract.").

   Of course, that a CPL is not an independent title insurance
policy does not mean that the two agreements are completely
unrelated.  "Title insurance underwriters issue closing
protection letters to persuade customers to trust their agents,
*so that their policies can be sold*."  *Title Insurance Law* §
20:19 (emphasis added); *see also, e.g., Fleet Mortgage Corp. v.*
*Lynts*, 882 F. Supp. 1187, 1190 (E.D. Wis. 1995) (arbitration
clause in the title insurance policy "reasonably covered"
lender's action under the policy's accompanying CPL).

"An express indemnity agreement, being a written contract, must be construed in accordance with the traditional rules of contract interpretation." *Ulico Cas. Co. v. Atl. Contracting & Material Co., Inc.*, 822 A.2d 1257, 1266 (Md. Ct. Spec. App. 2003), *aff'd*, 844 A.2d 460 (Md. 2004). "Generally, when interpreting a contract's terms, our primary consideration is the customary, ordinary, and accepted meaning of the language used." *Fister ex rel. Estate of Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 199 (Md. 2001) (internal quotation marks omitted). "The terms of the contract must be interpreted in context, and given their ordinary and usual meaning." *Ulico Cas. Co.*, 822 A.2d at 1266. "When the court finds the language of a contract to be unambiguous, the court must give effect to its plain meaning." *Id.*

Here, the CPL obligated First American to "reimburse" Heritage for "actual loss" incurred "in connection with" closings of real estate transactions in which Heritage "[was] to be" a lender secured by a mortgage of an interest in land, and arising out of:

1. Failure of the Issuing Agent . . . to comply with [Heritage's] written closing instructions to the extent that they relate to (a) the status of the title to said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land . . . , or
2. Fraud or dishonesty of the Issuing Agent . . . in handling [Heritage's] funds or documents in connection with such closings.

14

Compl., Ex. G. The CPL predated, and thus governed, the closing of the HELOC and issuance of the associated title insurance policy. *Compare* Compl., Ex. G (CPL dated June 18, 2007), *with id.*, Ex. D (deed of trust on the Property dated June 25, 2007), *and id.*, Ex. E (title insurance policy dated July 16, 2007).

"Whe[n] a contract is strictly one of indemnity, that is, one against loss or damage, the indemnitee cannot recover until he has made payment or otherwise suffered an actual loss or damage against which the covenant runs." *Levin v. Friedman*, 317 A.2d 831, 834 (Md. 1974); *Roebuck v. Steuart*, 544 A.2d 808, 812 (Md. Ct. Spec. App. 1988) (characterizing the "actual loss" requirement in strict indemnity cases as "the prepayment rule").[17] Here, Heritage's assignor NCB relied on the CPL in purchasing title insurance from First American and in using First American's agent to settle the HELOC. Compl. ¶¶ 59-60. Accepting the well-pled allegations in the complaint as true, *Brockington*, 637 F.3d at 505, Excelente failed to place NCB's lien in second position (in violation of Heritage's closing instructions), and filed the Community First Bank lien before filing the NCB lien, which "prevented the NCB lien from being in

---

[17] *See also* 41 Am. Jur. 2d *Indemnity* § 24 ("Under an agreement to indemnify against loss only, it is theoretically impossible for an indemnitee to have an actionable claim against the indemnitor until the indemnitee actually has paid something the indemnitee is legally obligated to pay.").

second position." Compl. ¶¶ 62, 64-65. However, NCB and its assignees did not suffer actual loss because of Excelente's malfeasance until--at the earliest--November 30, 2009, when foreclosure on the Property was completed, leaving the HELOC unpaid. *Id.* ¶¶ 41-42; *see id.*, Ex. N.

Because this action was filed fewer than three years later, Heritage's claim for breach of contract is not time-barred.

b. Detrimental Reliance

As stated above, "[Maryland] law is concerned with accrual in the sense of testing whether all of the *elements* of a cause of action have occurred so that it is complete." *St. Paul Travelers*, 987 A.2d at 121 (emphasis added) (internal quotation marks omitted). In Maryland, the elements of detrimental reliance are: (1) a "clear and definite promise"; (2) whereby "the promisor has a reasonable expectation that the offer will induce action or forbearance on the part of the promisee"; (3) which "does induce" actual and reasonable action or forbearance by the promisee; and (4) "causes a detriment" which can only be avoided by the enforcement of the promise. *Pavel Enters., Inc. v. A.S. Johnson Co.*, 674 A.2d 521, 532 (Md. 1996).

As explained above, First American promised to reimburse NCB for actual loss incurred in connection with future closings of real estate transactions involving NCB and arising out of certain misdeeds by First American's issuing agent. Compl., Ex.

16

G. Heritage has alleged sufficient facts from which the Court may infer that First American reasonably expected its offer to induce action by NCB: namely, entry into real estate transactions that it would not otherwise have pursued. *Cf. Title Insurance Law* § 20:19 ("Title insurance underwriters issue closing protection letters to persuade customers to trust their agents, *so that their policies can be sold.*" (emphasis added)). Further, the promise *actually* induced NCB to enter into the HELOC and Policy. *See* Compl. ¶¶ 59-60. Finally, "actual" detriment resulted when foreclosure on the Property was completed in November 2009, leaving NCB's assignee Heritage responsible for the unpaid balance on the HELOC. *Id.* ¶ 42. This action was filed fewer than three years later.

Thus, Heritage's alternative claim for detrimental reliance is not time-barred.[18]

c. Fraud (Vicarious Liability)

To state a claim for fraud under Maryland law, five elements must be alleged with particularity: (1) the defendant

---

[18] In its reply brief, First American suggests--in a footnote--that Heritage's detrimental reliance claim "should be dismissed" because "a party may not plead a quasi-contract claim . . . if it also has a claim arising out of a contract and the allegations concerning the contract claim are the same." ECF No. 18 at 4 n.1. To the extent that First American formally asserts this argument as a basis for dismissal, the argument was not raised in its original motion to dismiss; accordingly, the Court will not consider it here. Moreover, Federal Rule of Civil Procedure 8(d)(3) expressly permits Heritage to "state as many separate claims . . . as it has, regardless of consistency."

made a false statement of fact; (2) the defendant knew the statement was false or acted with reckless disregard for the truth of the statement; (3) the defendant made the statement for the purpose of defrauding the plaintiff; (4) the plaintiff reasonably relied on the false statement, and (5) the plaintiff was damaged as a result. *Marchese v. JPMorgan Chase Bank, N.A.,* 2013 WL 136427, at *9 (D. Md. Jan. 8, 2013).

For this analysis, the Court will assume--as has First American, *see* ECF No. 8-1 ¶ 10 & n.5--that Heritage has alleged a viable cause of action against First American. As to the timeliness of the claim, First American argues that the complaint does not contain specific factual allegations that "damages" first occurred upon foreclosure on the Property in November 2009, and "an opposition cannot be used to remedy a pleading deficiency." ECF No. 18 at 4-5. As discussed at length above, the complaint includes allegations from which the Court may reasonably infer that Heritage was damaged, if at all, when foreclosure occurred--allegedly in November 2009--rendering the HELOC--which was ultimately assigned to Heritage--unsecured. *See, e.g.,* Compl. ¶ 42.

"The statute of limitations, as a defense that does not go to the merits, is disfavored in law and is to be strictly construed." *Newell v. Richards,* 594 A.2d 1152, 1157 (Md. 1991).

Having so construed First American's arguments, the Court finds that dismissal is not warranted.

III. Conclusion

For the reasons stated above, First American's motion to strike will be granted. Heritage's motion for leave to file a surreply, and First American's motion to dismiss, will be denied.

_____8/14/10_____
Date

_____
William D. Quarles, Jr.
United States District Judge